# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| RAFAEL CHIEKE, | No. 1:17-CV-00003 |
|---|---|
| Plaintiff, | (Judge Brann) |
| v. | |
| COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### OCTOBER 30, 2019

Plaintiff Raphael Chieke sued his employer under Title VII and the Pennsylvania Human Rights Act (PHRA) for discrimination on the basis of his race and national origin. On July 3, 2019, Defendants moved for summary judgment. For the reasons that follow, I grant that motion.

## I.  BACKGROUND

As many governmental organizations do, the Pennsylvania Department of Corrections categorizes its employees by levels for human relations purposes. Higher levels bring higher pay, broader authority, and greater responsibilities.

Raphael Chieke was hired by the Department of Corrections in 1998 to work in their Equal Employment Opportunity (EEO) office.[1] He entered at the Manager I

---

[1] Chieke Dep 24:22–24, ECF No 25-2.

level.² Chieke was promoted to Director of the EEO office, a Manager II position.³ Part of his responsibilities in this position included conducting investigations into EEO complaints.⁴ Chieke consistently received excellent performance evaluations,⁵ and he achieved the highest score in Pennsylvania on the applicable civil service test.⁶

Chieke believed that the complexity and volume of the work that he did warranted his classification at the Manager III level, so he applied multiple times over the years to have his position reclassified.⁷ These requests were all denied.⁸ His last application was made in November 2014, and it was denied on February 11, 2016.⁹ Chieke retired in April 2016.¹⁰

Chieke is a black man who immigrated to the United States from Nigeria.¹¹ During his employment, Chieke never heard anyone comment on his race or national origin.¹²

---

² *Id*.

³ *Id* at 14:19–24, 15:11–18.

⁴ *Id* at 15:23–24.

⁵ *See* Motion for Summary Judgment Exhibit A *10–42, ECF No 25-1; Chieke Dep at 29:11–13.

⁶ Chieke Dep at 74:12–16.

⁷ *Id* at 31:17–19, 39:16–40:1, 45:1–5.

⁸ *Id.*

⁹ Motion for Summary Judgment Exhibit C *21, ECF No 25-3; Chieke Dep at 57:7–20.

¹⁰ Chieke Dep at 124:19–24.

¹¹ *Id* at 12:10–15, 51:16.

¹² *Id* at 29:24–30:3.

## II. DISCUSSION

Chieke brings discrimination, hostile work environment, and retaliation claims under Title VII and the PHRA. The Department of Corrections moved for summary judgment on all counts.

### A. Standard of Review

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] A dispute is "genuine if a reasonable trier-of-fact could find in favor of the non-movant," and "material if it could affect the outcome of the case."[14] When deciding whether to grant summary judgment, a court should draw all reasonable inferences in favor of the nonmoving party.[15]

To defeat a motion for summary judgment, the nonmoving party must point to evidence in the record that would allow a reasonable jury to rule in that party's favor.[16] "When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[17] Moreover, "if a party fails to

---

[13] FRCP 56(a).

[14] *Lichtenstein v University of Pittsburgh Medical Center*, 691 F3d 294, 300 (3d Cir 2012), citing *Anderson v Liberty Lobby*, 477 US 242, 248, 252 (1986).

[15] *Matsushita Electric Industrial Co v Zenith Radio Corp*, 475 US 574, 587 (1986).

[16] FRCP 56(c)(1); *Anderson*, 477 US at 249.

[17] *Port Authority of NY and NJ v Affiliated FM Insurance Co*, 311 F3d 226, 233 (3d Cir 2002).

properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[18] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[19]

B. **Statutes of Limitations**

Claims under Title VII and the PHRA must be brought within 300 and 180 days of the adverse employment action, respectively.[20] Therefore, Chieke's Title VII claims are time-barred for events prior to October 29, 2015, and his PHRA claims are time-barred for events prior to February 26, 2016.

Chieke argues that he should be excepted from the statutes of limitations under the continuing violations doctrine. If applicable, that doctrine permits a court to consider claims that arise in part from events outside the statute of limitations as long as at least one event occurred within the limitations period. It applies when the plaintiff shows that (1) at least one discriminatory act occurred within the statutory period and (2) the acts were all part of an ongoing pattern of unlawful conduct.[21] It does not, however, apply to claims arising from discrete acts.[22]

---

[18] FRCP 56(e)(2).

[19] FRCP 56(e)(3).

[20] *See Mandel v M & Q Packaging Corp*, 706 F3d 157, 165 (3d Cir 2013); 24 Pa CSA § 5007.

[21] *Mandel*, 706 F3d at 165–66.

[22] *Id* at 165.

Courts have applied the continuing violations doctrine to a hostile work environment claim.[23] However, the doctrine will not apply to a hostile work environment claim when "the alleged actions of the defendants are of the type that should trigger 'an employee's awareness of and duty to assert his or her rights.'"[24] A failure to promote is one of these triggering events.[25]

Chieke's hostile work environment claim is premised on the Department of Corrections' denial of his request to reclassify his position. Similar to a failure to promote, the denial of a request to reclassify a position is a discrete event that should have triggered his awareness of his duty to assert his rights.[26] This is particularly true on the facts of this case because Chieke, as the director of the EEO office, was well aware of his rights. The continuing violations doctrine simply does not apply in this case.

Chieke alleges only one failure to reclassify within Title VII's limitations period, which occurred on February 11, 2016.[27] I will consider his Title VII claims on this event only. However, this and the other alleged incidents all fall outside of

---

[23] *Id.*

[24] *See Kovoor v School District of Philadelphia*, 211 F Supp 2d 614, 622 (ED Pa 2002) (finding that a failure to promote was a discrete act), quoting *West v Philadelphia Electric Co*, 45 F3d 744, 755 (3d Cir 1995).

[25] *Kovoor*, 211 F Supp 2d at 622.

[26] *See id* ("[A] plaintiff cannot rely on a series of failures to promote to extend the relevant statutory period, because each individual rejection of the plaintiff was actionable under the civil rights laws.").

[27] Motion for Summary Judgment Exhibit C at *21.

the PHRA's limitations period, and so I will enter summary judgment for Defendants on all of the PHRA claims.

## C. Count I: Discrimination

Chieke, who worked at a Manager II designation, applied for his position to be reclassified as a Manager III. The Department of Corrections denied his request. Chieke asserts that this decision was the product of discrimination on the basis of his race and national origin in violation of his rights under Title VII.

Discrimination claims under Title VII are analyzed under the *McDonnell Douglas* burden-shifting framework. To establish a claim, the plaintiff must first make out a *prima facie* case of discrimination; second, the defendant must articulate some legitimate, nondiscriminatory reason for the employment action; third, the plaintiff must then prove that the defendant's proffered reason was a pretext for discrimination.[28] To establish a *prima facie* case, Chieke must prove that he belongs to a protected class and that he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination.[29]

Neither the parties nor this Court have identified any Third Circuit cases addressing a failure to reclassify claim.[30] It bears similarities to a failure to promote

---

[28] *See Rorke v Aubrey Alexander Toyota*, 2019 WL 3002973, at *12 (MD Pa July 10, 2019).

[29] *See Broomer v Loch Haven University*, 2012 WL 1059745, at *8 (MD Pa Feb 7, 2012).

[30] *But see Riddell v Slippery Rock University*, 2006 WL 2773414, at *13–15 (WD Pa Sept 25, 2006) (finding plaintiff established a *prima facie* case of employment discrimination premised in part on a failure to reclassify her position).

claim—in both, the plaintiff was denied a position with some combination of higher pay, power, or prestige. Failures to promote have been held to be cognizable adverse employment actions under Title VII.[31] A failure to reclassify comparably impacts the employee's "compensation, terms, conditions, or privileges of employment,"[32] and therefore may be a cognizable adverse employment action.

But the criteria for evaluating the two claims differ in important ways. Courts analyzing failure to promote claims often look to evidence about how the company advertised the position and who ultimately filled it.[33] Neither of these types of evidence apply to a failure to reclassify claim because no position is advertised and there are no other applicants for it. For this reason, while the failure to reclassify plaintiff does not face a higher legal burden than the failure to promote plaintiff, he may in practice find it more difficult to find the evidence to satisfy it. Some courts outside of this Circuit have found it useful to examine how similarly situated employees were treated when addressing failure to reclassify claims.[34]

---

[31] *See Watson v Pennsylvania*, 2009 WL 151595, at *3 (MD Pa Jan 21, 2009), citing *Sherrod v Philadelphia Gas Works*, 57 Fed Appx 68, 73 (3d Cir 2003).

[32] 42 USC § 2000e-2(a)(1).

[33] *See, for example*, *Bray v Marriott Hotels*, 110 F3d 986, 990 (3d Cir 1997).

[34] *See Riddell*, 2006 WL 2773414 at *15; *Johnson v Auburn University*, 403 F Supp 2d 1101, 1109 (MD Ala 2005), citing *Moore v Devine*, 767 F2d 1541, 1546 (11th Cir 1985); *Jackson v David Wade Correctional Center*, 2010 WL 11582928, at *3–4 (WD La Mar 31, 2010).

Chieke has not identified any similarly situated employees, let alone any that were treated better than him.[35] To the contrary, he concedes that his duties were unique.[36] The remaining evidence in the record does not close the gap left by the lack of comparator evidence. There is no testimony or documentary evidence beyond Chieke's own speculation that the decision not to reclassify his position was tied in any way to his race or national origin, and Chieke acknowledged in his deposition that the Department of Corrections' explanation that it faced a significant amount of uncertainty regarding its organization and duties going forward was accurate.[37] Without evidence of a causal connection to discrimination and with a reasonable nondiscriminatory explanation for denying the reclassification, Chieke has not established a *prima facie* case of discrimination.[38] I therefore grant summary judgment to Defendants on this claim.

---

[35] *See Terrell v City of Harrisburg Police Department*, 549 F Supp 2d 671, 681 (MD Pa 2008) ("Similarly situated employees are those who 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.").

[36] Plaintiff's Supplemental Brief in Opposition to Defendant's Motion for Summary Judgment 4, ECF No 43.

[37] *See* Chieke Dep 54:6–11.

[38] For the same reason, Chieke's employment discrimination claim would fail even if, *arguendo*, this were sufficient for the *prima facie* case. At the second step of the *McDonnell Douglas* analysis, the uncertainty surrounding the position was a valid, nondiscriminatory reason to deny his request for a reclassification, and at the third step, Chieke has not identified any evidence that this justification was pretextual.

### D. Count II: Hostile Work Environment

To establish a claim for hostile work environment, the plaintiff must show that he suffered intentional discrimination because of his race, the discrimination was severe or pervasive, the discrimination detrimentally affected the plaintiff, and the discrimination would detrimentally affect a reasonable person in like circumstances.[39] In determining whether the discrimination was severe or pervasive, "a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[40] When considering whether a plaintiff was subject to severe or pervasive discrimination, a court should consider the frequency of the alleged conduct, the severity of the conduct, whether the conduct was physically threatening or humiliating, whether the conduct unreasonably interfered with work performance, or whether the conduct amounted to nothing more than mere offensive utterances.[41] "The threshold for pervasiveness and regularity of discriminatory conduct is high."[42]

---

[39] *Mandel*, 706 F3d at 167.

[40] *Id* at 168.

[41] *Jensen v Potter*, 435 F3d 444, 449 n 3 (3d Cir 2006).

[42] *Greer v Mondelez Global, Inc*, 590 Fed Appx 170, 173 (3d Cir 2014).

The evidence in the record does not indicate that any discrimination Chieke may have suffered was severe or pervasive. Chieke has not identified any evidence that any discriminatory comments were made toward or about him.[43] He was never physically threatened or humiliated.[44] If there was any discrimination, it did not appear to affect his work, as his evaluations were uniformly positive.[45]

Chieke's allegations do not aptly describe a "hostile work environment." I therefore grant summary judgment to Defendant on this claim, as well.

### E. Count III: Retaliation

To establish a *prima facie* case of retaliation, the plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[46] The third prong requires the plaintiff to show but-for causation.[47]

Here, the Department of Corrections does not contest the first prong, and, as discussed in Part II.C, I find that Chieke has met the second prong by showing that he was denied a reclassification.[48] However, Chieke has not pointed to evidence in

---

[43] Chieke Dep at 29:24–30:2.

[44] *Id*.

[45] *See* Motion for Summary Judgment Exhibit A at *10–42.

[46] *Fogleman v Mercy Hospital, Inc*, 283 F.3d 561, 567–68 (3d Cir 2002).

[47] *University of Texas Southwestern Medical Center v Nassar*, 570 US 338, 362 (2013).

[48] *See* Part II.C at 7.

the record sufficient to raise a reasonable inference of a causal connection between his EEO investigations and the denial of reclassification. Chieke identified no statements or documents to that effect. Further, he had himself conducted these investigations for over a decade. During that time, Chieke received a promotion from Manager I to Manager II, additional staffing, and excellent reviews, all of which is wholly incongruous with retaliation.[49] Plaintiff has not presented sufficient evidence of retaliation, and I grant summary judgment to Defendant.

## III. CONCLUSION

Defendants' motion for summary judgment is **GRANTED**.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[49] Chieke Dep 26:3–5, 26:21–25; Motion for Summary Judgment Exhibit A at *10–42.